118 N.W.2d 565 (1962)
ALSCO IOWA, INC., Appellant,
v.
Archie JACKSON, d/b/a American Insulation & Supply Company, Appellee.
No. 50805.
Supreme Court of Iowa.
December 11, 1962.
Rehearing Denied February 12, 1963.
*566 Abramson, Myers & Hockenberg, Des Moines, for appellant.
Kindig, Beebe, McCluhan & Rawlings, Sioux City, for appellee.
LARSON, Justice.
This action was brought against Archie Jackson, d/b/a American Insulation & Supply Company, hereafter referred to as American, for an amount due on the account of American. Jackson filed an answer in which he alleged that he was the president and principal stockholder of the Soo Premium Construction Company, hereafter referred to as Soo corporation; that American, which was prior to 1960 an individual enterprise, merged into the Soo corporation prior to the time defendant took over the assets of the company; "that the items sued upon were not purchased by the defendant in his individual capacity, but were purchased by the corporation"; and that if there was any liability for the account, "it is the sole liability of the corporation and not the liability of this defendant."
In reply plaintiff Alsco Iowa, Inc. alleged at all material times that it dealt with defendant who represented himself to be the owner of American, an individual proprietorship, and that defendant is estopped from now claiming the merchandise was actually purchased by the Soo corporation.
At the close of the evidence the trial court found plaintiff had failed to prove the defendant "was acting as an undisclosed agent of the corporation", that defendant did not mislead the plaintiff in his conversation and manner of doing business, but showed he was acting for the corporation, and that defendant Jackson "made full disclosure to the plaintiff of the capacity in which he was operating and his relationship to the business." Judgment was rendered for defendant and plaintiff appeals, contending there *567 was no substantial support in the evidence to justify the court's findings of fact and that its findings of fact and conclusions of law drawn therefrom were erroneous.
I. In this jurisdiction, as in most others, an agent who enters into a contract or purchases merchandise from another without disclosing his principal is held personally liable for it. Fritz v. Kennedy, 119 Iowa 628, 93 N.W. 603; Amans v. Campbell, 70 Minn. 493, 73 N.W. 506, 68 Am.St. Rep. 547; Saco Dairy Co. v. Norton, 140 Me. 204, 35 A.2d 857, 150 A.L.R. 1299; Givner v. United States Hoffman Machinery Corp., 49 Ohio App. 410, 197 N.E. 354. Furthermore, he does not escape liability by purporting to act for a fictitious or non-existent principal. Restatement of the Law, Agency 2d, § 321.
On the other hand, when his principal is fully disclosed, the agent ordinarily does not incur personal liability. International Trading Corp. v. Edison, 71 App. D.C. 210, 109 F.2d 825. Also see 3 Am.Jur. 2d, Agency, § 317, p. 674, and 3 C.J.S. Agency § 216a; Mechem on Agency, 2d Ed., Vol. 1, § 1413.
Thus liability of defendant Jackson in the case at bar depends upon whether a principal existed and, if so, upon the extent to which such principal was disclosed. In determining this issue we must be guided not only by the pleadings but by the evidence produced upon the factual issue relating to a full and complete disclosure.
II. As the action is at law, the findings of fact by the trial court, in so far as they have any substantial support in the evidence, are to be given the effect of a jury verdict. But like a jury verdict, such findings are not immune against review on appeal, if it appears that they are without substantial support in testimony. Nor does this rule exclude inquiry into the question whether, conceding the truth of a finding of fact, a conclusion of law drawn therefrom by the trial court is justified and correct. Artificial Ice Co. v. Reciprocal Exch., 192 Iowa 1133, 1139, 184 N.W. 756; Dysart Savings Bank v. Weinstein, 152 Iowa 260, 132 N.W. 18; 3 Am.Jur., Appeal and Error, § 899, p. 464.
III. The crux of this case, then, is whether there was a full and complete disclosure of the principal's identity shown by the record evidence and permissible inferences to justify the court's findings and judgment herein.
As we view the record in a light most favorable to the defendant, it discloses that plaintiff's general manager Joe Barksdale and its salesman Howard Lafferty called at the office of the American company in October, 1960, for the purpose of collecting a past due account. While there they met defendant, who told them that he was going to pay the account, that he had just "acquired the business", that he had "acquired all the stock from Spencer Day and that we are going to try to make this business go." The past due bill was then paid, and further orders for merchandise from American were received and filled by plaintiff between February 1, 1961, and April 15, 1961, including a large written order of February 16, 1961, which was entitled "Sold to American Ins." and signed "By Archie A. Jackson".
However, at no time material herein does it appear that defendant ever advised plaintiff that American was a style and trade name for Soo Premium Construction Company, a corporation now alleged by defendant to be the real principal involved.
While the amount originally sued upon was $5,167.69, by stipulation of the parties this amount was reduced to the figure of $2,040.33 by virtue of certain credits.
It is plaintiff's contention the evidence did no more than disclose that defendant was the owner of American and operated it as an individual business, and even though it appears he signed the order, Exhibit "6", by Archie A. Jackson, it did not disclose the real principal which was the Soo corporation.
*568 The trial court was persuaded by the fact that when plaintiff sold merchandise to American and accepted an order signed by defendant Jackson, it was aware he acted as American's representative. It concluded such evidence proved plaintiff was not relying upon defendant individually. The other evidence which the court believed persuasive was that defendant ordered some siding for his own building and asked plaintiff to take that item off the American account and accept his check for it.
However true, we can find in such testimony no more than substantial evidence that defendant was acting for American and did not disclose he was in truth and in fact acting for Soo corporation, the real principal. It would, therefore, appear that credit was actually being extended to defendant, and that actual ownership of American was never clearly or sufficiently disclosed. Furthermore, it appears defendant's reference of acquiring "stock" from Day was just as consistent with ownership of the stock of goods and merchandise as it was to stock in a corporation. Since no reference to Soo corporation was ever made to plaintiff at any time, it seems defendant's representative capacity at best would only amount to a partial disclosure of his principal.
IV. It is stated in section 321, Restatement of Agency, 2d, "Unless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract." In comment (a) it is stated, "A principal is a partially disclosed principal when, at the time of making the contract in question, the other party thereto has notice that the agent is acting for a principal but has no notice of the principal's identity. See § 4. The fact that, to the knowledge of the agent, the other party does not know the identity of the principal is of great weight in ascribing to the other party the intention to hold the agent liable either solely, or as a surety or co-promisor with the principal. The inference of an understanding that the agent is a party to the contract exists unless the agent gives such complete information concerning his principal's identity that he can be readily distinguished. If the other party has no reasonable means of ascertaining the principal, the inference is almost irresistible and prevails in the absence of an agreement to the contrary."
In 3 Am.Jur.2d, § 317, p. 674, it is stated, "One who acts as agent for another in making a contract is individually liable thereon if, at the time of making the contract, he fails to disclose his agency and the identity of his principal, * * *. If the agent would avoid personal liability, the duty is on him to disclose his principal; it is not upon the party with whom the agent deals to discover the principal. There is no hardship in this rule of liability against agents who do not disclose their principals; they always have it in their power to relieve themselves from such liability, and when they do not, it must be presumed that they intend to be liable." (Emphasis supplied.)
In the leading case of Givner v. United States Hoffman Machinery Corp., supra, 49 Ohio App. 410, 197 N.E. 354, a person named Joseph Givner purchased a pressing machine under a conditional sales contract for use in a business operated under the name of "Givner's Dry Cleaning". He signed the contract "Givner's Dry Cleaning, by J. Givner" without indicating in any other way that he did so as agent for another doing business by that name. It was held Givner failed thereby to disclose either an agency or the identity of the principal and could not relieve himself of personal liability. The significance of the word "by" was therein considered and the court said, "Although the using of the word `by' in front of one's name, when signing the name of another person, natural or artificial, is generally recognized as a proper method of showing agency and disclosing, the principal, so as to impose no liability on such agent, the fact that defendant here signed `Givner's Dry Cleaning, by J. Givner,' without indicating in any way that he did so as agent and not as his own business name, did not amount to a disclosure of an agency or the identity of a principal. So far as the words *569 `Givner's Dry Cleaning' are concerned, the business could have been owned by either Joseph or Becky Givner or both or someone else."
So here, even though it may be said the conduct of Jackson was sufficient to justify the court in finding it did reveal an agency with American, there is nothing to even suggest that the principal was the Soo corporation.
In the Givner case the court also said that "the mere fact that one is known to be acting as an agent for an undisclosed principal is not sufficient to relieve him from liability as a principal; to relieve himself upon that ground, he must not only make known his agency, but must also make known his principal, and deal for him in his name and as his agent."
In another leading case of Saco Dairy Co. v. Norton, supra, 140 Me. 204, 35 A.2d 857, 150 A.L.R. 1299, there was likewise no disclosure of an agency relationship nor of the principal's identity. There the defendant managed a summer hotel known as Breakwater Court. It was owned by his mother. Plaintiff sold substantial amounts of dairy products to the hotel as a result of interviews with defendant, but at no time was the ownership of the place discussed. While the account was charged to Breakwater Court, not to defendant, it had been paid with a check signed Kate F. Norton by R. T. Norton, Atty. When further bills were not paid, action was commenced against defendant and recovery was allowed. This, applicable to our case, appears in the opinion: "The fact that a contract is negotiated by an agent, under a trade name, is not of itself a sufficient disclosure of his agency," citing Amans v. Campbell, supra, and other cases, and "If an agent who negotiates a contract in behalf of his principal would avoid personal liability, the burden is upon him to disclose his agency to the other contracting party. And his disclosure must include not only the fact that he is an agent, but also the identity of his principal," citing cases.
It would unduly lengthen this opinion to consider or cite other authorities, but perhaps one other case should be mentioned. Resnick v. Abner B. Cohen Advertising, D.C.Mun.App., 104 A.2d 254, was an action on contract signed by defendant as president of a named company. The answer admitted the company named was not the official name of the real principal, a corporation, and from a summary judgent for plaintiff, an appeal was granted. It was held the complaint and the answer raised a fact question as to whether a principal existed, and if so, the extent to which such principal was disclosed. While recognizing the agent's liability in dealing or purporting to act for a fictitious or nonexistent principal and that an agent acting for a fully disclosed principal is not personally liable on a contract, it held the mere use of a trade name in a contract signed by an agent is not sufficient to show as a matter of law that the principal was undisclosed, but that contracts may be executed under a trade name under such circumstances as to disclose the identity of the principal. The cause was, therefore, remanded for a full hearing on those circumstances.
We find insufficient circumstances here to raise a jury question as to whether the true principal was disclosed. If it were conceded an agency was disclosed by defendant's signature of approval of the American purchase, there is nothing to indicate he was acting on behalf of the Soo corporation, which he alleged in his answer was the real principal involved. There is no evidence that American was owned by the Soo corporation or had any connection therewith. Obviously there is no suggestion or inference that defendant was acting for the Soo corporation, such as is found in the case of Thilmany v. Iowa Paper Bag Co., 108 Iowa 357, 79 N.W. 261, relied upon by defendant. In that case the instrument upon which liability was sought was signed "Iowa National Bank, by William Daggett, V. P." Clearly, there the Iowa National Bank was a legal entity, not a trade name such as we *570 have here, where ownership could be by an individual, a partnership, or a corporation. Also the designation of V. P. advises all that he purported to act as an officer for a corporate entity in a representative capacity, and the other person would be aware of the party with whom he was actually dealing.
We are satisfied defendant failed in his duty to disclose the true principal for whom he was acting and that under the record before the court he could not escape personal liability to plaintiff on the balance of American's account.
Reversed and remanded.
All Justices concur.