**Blenna A. CUNNINGHAM, Plaintiff,**

v.

**UNITED NATIONAL BANK OF WASHINGTON, et al., Defendants.**

**Civ. A. No. 88–1008.**

United States District Court, District of Columbia.

May 4, 1989.

Howard S. Epstein, Washington, D.C., for plaintiff.

Paul S. Ryerson, David J. Shaffer, Patricia H. Davis, Arnold & Porter, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

REVERCOMB, District Judge.

The defendants have moved for summary judgment in this case, which involves numerous claims by the plaintiff arising from her termination as a vice president of defendant United National Bank of Washington ("UNB"). Oral argument was heard on January 18, 1989; the plaintiff supplemented her opposition on March 28, 1989. In this Memorandum and Order, the Court (1) denies defendants' motion for summary judgment on the breach of contract claim and on the defamation claims but (2) grants the motion with regard to the plaintiff's claims of intentional inflic-

tion of emotional distress and violations of pension law.

Motions for summary judgment may be granted when the movant has established that there are no genuine issues of material fact in dispute. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). While a nonmoving party may not rest on mere allegations in its pleadings, *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. The standard for denying a motion is whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. Indeed, when a dispute concerns the credibility of witnesses, only a trial jury, and not a judge weighing summary judgment pleadings, is able to assess the demeanor and attitude of witnesses.

## I. Breach of Contract

■ Under a provision of the National Bank Act, an officer of a national bank may be terminated at the "pleasure" of the bank's board of directors. 12 U.S.C. § 24 Fifth. Plaintiff Blenna Cunningham has admitted that if she was indeed fired pursuant to a proper vote of UNB's board, she loses on her breach of contract claim.

The members of UNB's board have each provided affidavits stating that the board voted on August 12, 1987, to fire Ms. Cunningham. The defendants argue that these statements, which are not controverted by any direct evidence, are sufficient to grant summary judgment on this issue. The Court disagrees.

Plaintiff has submitted considerable circumstantial evidence to the effect that the board did something less than conclusively vote to fire Ms. Cunningham on August 12, 1987. First, one of the board members has testified that it was less than clear to her whether the board formally voted to fire Ms. Cunningham without qualification.

Second, the actions after August 12, 1987, of defendant Samuel Foggie, chairman of UNB, are evidence that the board did not vote to fire Ms. Cunningham on August 12, 1987. Mr. Foggie met with Ms. Cunningham on August 17, 1987, to discuss the bank's problems with her, but never mentioned that the board had voted to fire her. Moreover, his letter to Ms. Cunningham of August 21, 1987, stated that she had been fired *"for cause"* (emphasis in original) and did not mention action of the board. While these actions are not unreconcilable with the contention that the board fired Ms. Cunningham on August 12, 1987, they do raise doubts about this contention.

Third, the plaintiff has presented strong evidence that the purported minutes of the board meeting of August 12, 1987, which indicate that the board fired Ms. Cunningham, have been altered, tampered with, or otherwise dealt with in a suspect manner.

In sum, the Court concludes that it cannot at this time grant summary judgment on the breach of contract claim because the plaintiff has met her burden of proving that there *is* a genuine issue concerning whether UNB's board fulfilled the requirements of 12 U.S.C. § 24 Fifth. The Court DENIES the motion for summary judgment on the breach of contract claim without prejudice to renew on the ground that the plaintiff's allegations do not amount to a cognizable claim for breach of contract.

## II. Defamation

The plaintiff claims that the defendants have defamed her through, among other things, (1) interviews mentioned in newspaper articles that did not refer to her by name but concerned problems and changes at the bank in 1987; (2) an affidavit filed by a UNB employee alleging a lack of an arm's length relationship in some of the plaintiff's business dealings; and (3) defamatory oral statements allegedly made by UNB employees.

■■■■ First, when a plaintiff alleges defamation with regard to statements that are of "public concern," whether or not the plaintiff is a "public figure," the plaintiff has a burden under the first amendment of proving that the statements are false. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986). Although the *Philadelphia Newspapers* case applied only to media defendants and left open the question whether the standard protects nonmedia speakers, this jurisdiction has extended the doctrine to nonmedia defendants. *See Pearce v. E.F. Hutton Group, Inc.*, 664 F.Supp. 1490, 1511 (D.D.C.1987) (statements involved the banking industry). Accordingly, the Court in the instant case rules that the plaintiff has the burden of proving that the statements were false. However, the Court does not grant summary judgment on the defamation claims and will permit the plaintiff to attempt to prove her defamation claims at trial.

■■■■ Second, the Court also rejects defendants' argument that the lack of proof of "innuendo" is fatal to plaintiff's claim. The requirement that the libelous statement "must leave *no doubt*" as to the person's identity, *Summerlin v. Washington Star*, 7 Media L.Rep. 2460, 2461 (D.D.C.1981), is met by the fact that the statements were specific enough so that *some* readers could precisely identify the person mentioned in the newspaper accounts as Ms. Cunningham. While the published statements would not implicate her in the minds of layman readers, they probably would leave "no doubt" in the minds of those familiar with the situation at UNB.

Accordingly, the Court DENIES the defendants' motion for summary judgment on the defamation claims.

## III. Intentional Infliction of Emotional Distress

■■■■ In the District of Columbia, a plaintiff alleging a claim for intentional infliction of emotional distress must prove (1) that the defendant engaged in extreme and outrageous conduct (2) that intentionally or recklessly (3) caused severe emotional distress to the plaintiff. *Ridgewells Caterer, Inc. v. Nelson*, 688 F.Supp. 760, 764 (D.D.C.1988). This tort is restricted only to con-

duct that is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious and utterly intolerable in a civiled community." *Id.* (quoting Restatement (Second) of Torts § 46, comment at 73.).

The plaintiff in this case alleges that she has suffered severe emotional distress as a result of being fired by UNB, witnessing the defendants' efforts to maintain that she was guilty of misconduct, and being a known diabetic. Even accepting the plaintiff's allegations as true, the Court nonetheless concludes that it falls far short of the standard for intentional infliction of emotional distress. The tort is reserved for unusually outrageous conduct, and should not be successfully pursued by merely alleging "unfair" circumstances surrounding a termination of employment. Because the Court would not permit a jury to find for the plaintiff on this claim in this case, the Court GRANTS the defendants' motion for summary judgment on the claim of intentional infliction of emotional distress.

### IV. Pension Claims

The plaintiff alleges three problems with the defendants' distribution to her of shares in UNB's pension plan. Each of the three points are unfounded.

First, the plaintiff claims that UNB gave the IRS a Form 1099 that misstated the amount paid to Ms. Cunningham. In addition to the fact that this allegation has not been pleaded, the plaintiff has not even stated that federal law grants her a private cause of action. *See Gulf Life Insurance Co. v. Arnold,* 809 F.2d 1520, 1524 (11th Cir.1987) (ERISA causes of action to be construed narrowly).

Second, the plaintiff alleges that UNB has not had its plan valued since December 31, 1986, in violation of law. Again, the plaintiff does not contend that this inaction provides her with any private cause of action, or that she was injured by the alleged failure to value the plan. The plaintiff was given shares, not money.

■ Third, the plaintiff asserts that UNB wronged her by not making its 1987 contribution to her by the time she was fired, on August 21, 1987. It is clear under the terms of the plan, however, that the employer's contribution was to be made at the end of each year, and that allocations were not to be made to employees who had been separated before the end of the year. Plan § 1.12. Under the "arbitrary or capricious" standard for reviewing actions of pension plan trustees, *see Holt v. Winpisinger,* 811 F.2d 1532, 1535 (D.C.Cir.1987), the Court concludes that the trustee's actions were clearly reasonable.

■ Finally, the Court notes that even if the plaintiff is attempting to claim that she is entitled to damages due to a delay in receiving her shares, she has no valid claim for damages as a result of such a delay. *See Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). In sum, the Court concludes that the distribution of the shares due to the plaintiff was made by UNB in accordance with the terms of the plan and federal law. Accordingly, the Court GRANTS defendants' motion for summary judgment on the pension claims.