**AEROFLOT RUSSIAN INTERNATIONAL AIRLINES, Plaintiff,**

v.

**Edward O'BRIEN, Defendant.**

**Civ. A. No. 93–651.**

United States District Court, District of Columbia.

June 16, 1993.

Allan I. Mendelsohn of the Law Offices of Allan I. Mendelsohn of Washington, DC, for plaintiff.

Jerry P. Roscoe of Schweitzer, Bentzen & Scherr of Washington, DC, for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, the Court held a status conference in the above-captioned case on May 24, 1993, to consider the Defendant's Motion to Dismiss. The Court learned that the parties agree that the Plaintiff, Aeroflot Russian International Airlines ("Aeroflot"), is owed $29,092.00 because it was never reimbursed for airline tickets issued to passengers through the Defendant. The parties also agree that the only issue to be decided in the case is whether the suit was properly brought against the Defendant, Edward O'Brien, or whether the suit should have been brought against Eurowest Tours,

O'Brien's business, as a corporate entity. The Court, with the agreement of the parties, heard testimony on the disputed issue from two witnesses. Based on the testimony, the arguments of counsel, the record in the case, and the applicable law, the Court concludes that the Plaintiff dealt with the Defendant, Edward O'Brien, in an individual capacity, and had no notice of the corporate identity of Eurowest Tours. Consequently, the Court will enter Judgment for the Plaintiff against the Defendant for the amount admittedly owed. The following shall constitute the Court's Findings of Fact and Conclusions of Law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

The Plaintiff, Aeroflot, entered an arrangement to provide round-trip air travel to Ireland as part of an Ireland vacation package. The arrangements were made between Victor M. Novosselov, Area Manager of Aeroflot ("Novosselov"), and Edward O'Brien, after an initial contact between the two at a travel show in late 1990.

Ordinarily, Aeroflot would issue tickets directly to customers, who arranged the tours through O'Brien's business. However, O'Brien was authorized to issue Aeroflot tickets when they were needed immediately. It is undisputed by the parties that a total of 67 tickets were issued during the latter half of 1992 without payment to Aeroflot of its share of the proceeds from the ticket sales. The total amount owed to Aeroflot for the tickets, also undisputed by the parties, is $29,092.00.

The Plaintiff brought suit against the Defendant on March 30, 1993. Count One of the Complaint alleges that the Defendant breached his contract with the Plaintiff by failing to pay for the tickets used. Count Two of the Complaint raises a cause of action for unjust enrichment, alleging the same facts.[1] O'Brien's only defense to his asserted liability for the use of the Aeroflot tickets is that the contractual arrangement was between Aeroflot and Eurowest Tours, not O'Brien. Eurowest Tours is a corporation of

---

1. At the conclusion of the hearing on May 24, 1993, the Plaintiff indicated that it would consent to a dismissal of Count Three of the Amended Complaint, which charged the Defendant with commercial defamation.

which O'Brien serves as the President, and O'Brien claims that he is not liable for the unpaid obligations of the corporation. Aeroflot disagrees, claiming that it had no notice of the corporate status of Eurowest Tours and believed that it was dealing with O'Brien in an individual capacity.

II. *BECAUSE EDWARD O'BRIEN FAILED TO GIVE AEROFLOT REASONABLE NOTICE THAT EUROWEST TOURS, OF WHICH HE SERVED AS PRESIDENT, WAS A CORPORATE ENTITY, O'BRIEN IS PERSONALLY LIABLE FOR THE AMOUNTS OWED TO AEROFLOT.*

The District of Columbia Code contains specific requirements with respect to domestic corporations. Specifically, § 29–308 provides that "[t]he corporate name shall contain the word 'corporation,' 'company,' 'incorporated,' or 'limited,' or shall contain an abbreviation of 1 of such words...." These designations provide notice of an entity's incorporated status to those who deal with the entity. As this Court has previously held:

> Under the law of the District of Columbia, an agent is not personally liable on a contract it executes on behalf of a principal *so long as it identifies the principal and discloses the agency relationship.* The requirement of disclosure is satisfied if, at the time of the transaction, the other party had notice that the agent is acting for a principal and of the principal's identity.

*Ridgewells Caterer, Inc. v. Nelson,* 688 F.Supp. 760, 762 (D.D.C.1988) (emphasis added) (citations omitted).

In this case, the Court must conclude that O'Brien did *not* identify Eurowest Tours as a corporation or disclose his agency relationship with the corporation at the time of the transaction. From the testimony of Novosselov and O'Brien, the Court finds that O'Brien initially approached Novosselov as an individual and did not disclose that Eurowest Tours was a corporation. At no time was Aeroflot explicitly informed of the corporate status of Eurowest Tours.

The exhibits submitted by Aeroflot clearly support this conclusion. The business card (Pl.'s Ex. 1), the written agreement between the parties (Pl.'s Ex. 2), various correspondence (Pl.'s Ex. 3, 4), invoices (Pl.'s Ex. 5), and checks paid to Aeroflot (Pl.'s Ex. 5, 6), *all* fail to contain any notice of Eurowest Tours' incorporated status. They contain the name "Eurowest Tours" and are usually signed by O'Brien, often without listing his position in the company.

Furthermore, most of the documents submitted as exhibits by O'Brien also fail to indicate the incorporated status of Eurowest Tours. All of the correspondence only contains the name "Eurowest Tours" or the signature of O'Brien. Only Defendant's Exhibit 17, which includes a sample business card and stationery of "O'Brien's Travel Service Inc.," contains any indicia of corporate status. There is no evidence, however, that Aeroflot ever received any correspondence from O'Brien on that letterhead, or that Aeroflot should have deduced from that letterhead that Eurowest Tours was also an incorporated entity.

The *only* evidence that Aeroflot received that might indicate the corporate status of Eurowest Tours are a number of checks received for reimbursement and cashed by Aeroflot which contain the name "Eurowest Inc." *See* Appendix A to Response of Defendant O'Brien to Plaintiff's Opposition to Defendant's Motion to Dismiss. However, the checks containing this name were only some of the many checks which were sent to Aeroflot. Many other checks merely contained the name "Eurowest Tours." Consequently, the Plaintiff was not "on notice" that it was dealing with a corporate entity. *Cf. Ridgewells Caterer, Inc.,* 688 F.Supp. at 762–63 (corporate agents could not be sued in their individual capacity when checks, correspondence, and prior contacts indicated the corporate status of the principal). O'Brien is liable, therefore, in his individual capacity, for Aeroflot's portion of the proceeds from the sale of the airline tickets as alleged in the Amended Complaint.

### III. *CONCLUSION*

Upon consideration of the Defendant's Motion to Dismiss, the applicable law, the record herein, and the evidence and arguments

of the parties presented at the hearing of May 24, 1993, the Court finds that the Plaintiff is entitled to Judgment against the Defendant with respect to Count One and Count Two of the Amended Complaint. Because the Defendant did not provide the Plaintiff with notice of the corporate identity of Eurowest Tours at the time of the transactions leading up to this suit, the Defendant cannot now use the shield of Eurowest Travel's corporate status to escape liability for the unpaid tickets. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

### JUDGMENT

Upon consideration of the Defendant's Motion to Dismiss, the evidence presented at the hearing of May 24, 1993, the arguments of counsel, the record herein, the applicable law, and for the reasons articulated in this Court's Memorandum Opinion of even date herewith, it is, by the Court, this 16 day of June, 1993,

ORDERED that the Defendant's Motion to Dismiss shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that judgment in the above-captioned case shall be, and hereby is, entered for the PLAINTIFF as to Counts One and Two of the Complaint; and it is

FURTHER ORDERED that Count Three of the Complaint shall be, and hereby is, DISMISSED with the consent of the parties; and it is

FURTHER ORDERED that the Defendant Edward O'Brien shall pay to the Plaintiff Aeroflot Russian International Airlines the sum of $29,092.00; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, DISMISSED from the dockets of this Court.